UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

ICENY USA, LLC,

    Plaintiff,

    v.

M&M'S, LLC,
MARVIN CASTRO MONDRAGON and
GABRIEL EUGENE PICO,

    Defendants.

Civil Action No. TDC-19-2418

## MEMORANDUM OPINION

Pending before the Court is a Motion for Default Judgment filed by Plaintiff ICENY USA, LLC ("ICENY") seeking judgment on causes of action for breach of contract, trademark infringement, and unfair competition arising out of the alleged breach of a franchise agreement authorizing Defendants to operate an ICENY Thai ice cream roll shop in Yuma, Arizona. Although Defendants have been properly served, they have failed to plead or otherwise respond to the Amended Complaint. Having reviewed the Amended Complaint, the Motion, and the supporting documents, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set for the below, the Motion for Default Judgment will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The factual background and procedural history of this case are set forth in detail in the Court's Memorandum Opinion on ICENY's Motion for Preliminary Injunction, which is incorporated by reference. *ICENY USA, LLC v. M&M's, LLC*, 421 F. Supp. 3d 204, 208-12 (D.

Md. 2019). As relevant here, on August 28, 2019, Defendant Gabriel Eugene Pico was served with the Summons and Complaint in this case. On September 6, 2019, after a hearing at which Defendants failed to appear, the Court entered a temporary restraining order ("TRO") against the Defendants. On October 1, 2019, the Court held a preliminary injunction hearing at which Defendants again failed to appear. On October 10, 2019, the Court entered a preliminary injunction against Pico only, because Defendants Marvin Castro Mondragon ("Castro") and M&M's, LLC ("M&M") had not yet been served with process at that time and had not received actual notice of ICENY's Motion for Preliminary Injunction. The preliminary injunction was effective against Pico, Pico's agents and employees, and all other persons in active concert and participation with them, and it enjoined them from operating a competing business, PARAD-ICE CREAM ROLLS, at the site of the former I-CE-NY shop in Yuma, Arizona ("the Shop"). It also enforced the non-competition clause ("the Non-Competition Clause") of the franchise agreement between the parties ("the Franchise Agreement") prohibiting operation of a dessert business selling Thai ice cream or other forms of ice cream or frozen desserts within a five-mile radius of the Shop. On October 2, 2019, a default was entered against Pico.

On October 10, 2019, Castro and M&M were served with Summonses, the Amended Complaint, the Court's August 23, 2019 Case Management Order, and the TRO. Neither Castro nor M&M filed a responsive pleading. On November 8, 2019, ICENY filed a Motion for Clerk's Entry of Default against Castro and M&M. On November 13, 2019, a default was entered against them. On January 16, 2020, ICENY filed a Motion for Default Judgment against all Defendants. At the Court's request, ICENY filed supplemental materials on April 15, 2020. To date, the Defendants have not responded to the default or ICENY's Motion for Default Judgment.

**DISCUSSION**

The Motion for Default Judgment seeks an order entering judgment against Defendants for $20,166.34 in past-due franchise, royalty, and brand fees and $130,938.08 in liquidated damages pursuant to the Franchise Agreement; $4.00 in nominal trademark infringement damages; $52,155.00 in attorney's fees; $2,331.02 in costs and expenses; and the release of the $2,000.00 bond posted with the Clerk of this Court on September 12, 2019.  ICENY also requests that the October 10, 2019 preliminary injunction against Pico be converted into a permanent injunction enforceable against all Defendants and all other persons in active concert and participation with them.

**I.     Legal Standard**

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Under Rule 55(b)(2), after a default has been entered by the clerk, the court may, upon the plaintiff's application and notice to the defaulting party, enter a default judgment.  Fed R. Civ. P. 55(b)(2).  A defendant's default does not, however, automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court.  *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion, which must be liberally exercised, in entering [default] judgments and in providing relief therefrom."); *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002).  The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment may be appropriate "when the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D.

Md. 2005); *see H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) ("[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.").

In reviewing a Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint relating to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). However, it remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.*; *see also* 10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2688 (3d ed. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."). If liability is established, the court must then determine the appropriate amount of damages. *See Ryan*, 253 F.3d at 780-81.

As to damages, the court cannot accept as true the factual allegations of the plaintiff, but must instead make an independent determination. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Lawbaugh*, 359 F. Supp. 2d at 422. To do so, the court may conduct an evidentiary hearing, *see* Fed. R. Civ. P. 55(b)(2), or may dispense with a hearing if there is an adequate evidentiary basis in the record from which to calculate an award. *See Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

## II. Liability

ICENY argues that default judgment is warranted because the fact of Defendants' default constitutes an admission of each factual allegation in the Amended Complaint. Because Defendants have failed to appear or otherwise defend, the Court accepts those allegations as true. *Ryan*, 253 F.3d at 780. Moreover, in this case, the Court has already analyzed both the allegations and additional evidence submitted by ICENY and effectively concluded that the Amended Complaint alleges valid claims for relief. Specifically, in granting ICENY's Motion for a Preliminary Injunction, the Court found that ICENY was likely to succeed on the merits of its breach of contract, federal trademark and unfair competition claims under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a) (2018), and state law trademark and unfair competition claims, as limited in its Memorandum Opinion. *See ICENY*, 421 F. Supp. 3d at 215-21 (concluding that the breach of contract claim relating to the Non-Competition Clause was likely to succeed only in part). Although the Motion was granted only as to Pico, the Court's analysis and conclusions on the merits of the claims extended to all Defendants. *See id.* Indeed, the Franchise Agreement was between ICENY and M&M, and as members of M&M, Castro and Pico signed a Guarantee and Assumption of Franchisee's Obligations in which they committed to be personally bound by the relevant terms. Franchise Agreement Ex. C, Am. Compl. Ex. 1, ECF No. 9-1. Based on that analysis, which the Court incorporates here by reference, the Court finds that ICENY has established that: (1) the parties entered into an enforceable contract, the Franchise Agreement, effective July 13, 2018, and Defendants breached this contract by failing to remit franchise fees and royalties or submit sales reports pursuant to the contract's terms after April 12, 2019; (2) the Mutual Termination and Release Agreement provided by M&M's former attorney to ICENY's counsel, which was purportedly signed by ICENY's Director of Operations, Teeradej

Naruenartwanich, contained a signature that was either forged or copied from another document and thus is unenforceable; (3) in further violation of the terms of the Franchise Agreement and the Notice of Default and Termination issued to M&M on June 28, 2019, Castro transferred the business to Pico or another individual who continued operating the Shop at the same location, rebranded as PARAD-ICE CREAM ROLLS, while utilizing the registered "I-CE-NY" mark on exterior signage, interior décor, cups and supplies, and on the Shop's social media pages, such as Yelp, Facebook, and Instagram; and (4) the Shop sold Thai ice cream rolls using ICENY's proprietary slogan, recipes, and "anti-griddle" process, as observed by ICENY's private investigator on September 26, 2019. *ICENY USA*, 421 F. Supp. 3d at 208-11, 215-16. Based on this conduct, ICENY has established Defendants' liability on its claims of breach of contract as to the Franchise Agreement, trademark infringement and unfair competition under the Lanham Act, and state law trademark infringement and unfair competition. *See id.* at 215-18. On the issue of breach of contract as to the Non-Competition Clause, consistent with its prior analysis, the Court does not find liability as to a breach of the provision barring Defendants from operating any dessert business of any kind. *See id.* at 221.

Although ICENY does not explicitly specify whether it is seeking default judgment on its unjust enrichment claim in Count 11 of the Amended Complaint, the Court will not find liability on this count. Under Maryland law, a plaintiff cannot bring a claim for unjust enrichment when the substance of the dispute with the defendant is governed by an express contract. *Janusz v. Gilliam*, 947 A.2d 560, 567 (Md. 2008). Here, where the Franchise Agreement is the express contract alleged to have governed the obligations Defendants owed to ICENY, the unjust enrichment claim cannot succeed. *See Willis v. Bank of America Corp.*, No. 13-02615, 2014 WL 3829520, at *27-28 (D. Md. Aug. 1, 2014); *Ramos v. Bank of America, N.A.*, No. 11-3022, 2012

WL 1999867, at *6 (D. Md. June 4, 2012). The Court therefore finds liability on Counts 1-10 and 13 of the Amended Complaint, as qualified above.

## III.   Remedies

### A.   Declaratory Judgment

In Counts 1 and 2, ICENY seeks a declaratory judgment that the Franchise Agreement terminated on June 28, 2019, and that the Mutual Termination and Release Agreement purportedly signed by Naruenartwanich was never executed by ICENY and is thus unenforceable. In light of the Defendants' default, and for the reasons already stated in the Court's Memorandum Opinion, the Court finds that ICENY is entitled to a declaratory judgment as to these counts.

### B.   Contract Damages

In Counts 3, 4, and 5, ICENY asserts breach of contract claims against Defendants for violation of the Franchise Agreement's requirement to pay franchise, royalty, and brand fees; for continuing to operate the Shop using ICENY's mark and proprietary and confidential materials, including branding, recipes, slogans, and marketing materials after termination of the Franchise Agreement; and for defaulting on royalty payments for the full term of the Franchise Agreement. In Count 13, ICENY also alleges that Castro and Pico may be held individually liable to the same extent as M&M, based on the personal guarantee signed as part of the Franchise Agreement.

In their Motion, ICENY seeks only contract damages that it can prove without an accounting, specifically $20,166.34 in past-due franchise and royalty fees and $130,938.08 in liquidated damages pursuant to the Franchise Agreement. In its supplemental filing, ICENY has submitted a declaration from Apisit Sutthisophaarporn, the President and sole member of ICENY, attesting to Defendants failure to pay $18,000 of the $25,000 initial franchise fee as required by paragraph 4.1 of the Franchise Agreement. ICENY has provided the July 12, 2018 invoice for the

franchise fee and a receipt showing that only $7,000 of that amount was paid. Where paragraphs 4.2 and 4.3 of the Franchise Agreement required Defendants to pay royalties of four percent of net sales and a brand fee of two percent of net sales, ICENY billed them for $2,166.34 in such fees for March 2019, as reflected in an April 10, 2019 invoice. Sutthisophaarporn has attested in his declaration that the $2,166.34 was never paid. ICENY has therefore established $20,166.34 in damages based on unpaid fees.

Under the Franchise Agreement, ICENY is entitled to early termination liquidated damages consisting of "the average weekly Royalty Fees and Brand Fund contributions" for 52 weeks prior to termination, or for all weeks of operation if less than one year, "multiplied by the lesser of . . . 208 weeks or the number of weeks . . . remaining in the Initial Term" of the Franchise Agreement. Franchise Agreement ¶ 20.3.1. Where the Initial Term of the Franchise Agreement was 10 years, and the Shop was operated for less than one year prior to termination, the 208-week multiplier is applicable. ICENY has submitted internal accounting records reflecting that Defendants reported $128,900.89 in net sales from January 17, 2019 to April 12, 2019, the only time period for which it provided such reporting. Following the calculation methodology in Sutthisophaarporn's declaration, this figure results in an average weekly royalty and brand fee contribution of $629.52, which when multiplied by 208 weeks results in at least the $130,938.08 in early termination liquidated damages sought by ICENY. Thus, the Court finds that ICENY has established damages of $20,166.34 and liquidated damages of $130,938.08.

  **C. Nominal Damages**

Where ICENY has established that it is entitled to default judgment on its Lanham Act and state law trademark infringement and unfair competition claims in Counts 7-10 but seeks only

nominal damages as to these claims, the Court finds that it is entitled to nominal damages of $1.00 for each count, for a total of $4.00.

### D. Permanent Injunction

On its breach of contract, trademark infringement, and unfair competition claims, ICENY requests that the October 10, 2019 preliminary injunction against Pico be converted into a permanent injunction effective against all Defendants.  A plaintiff seeking a permanent injunction must demonstrate that:  (1) it has suffered an irreparable injury; (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy is warranted; and (4) the public interest would not be disserved by a permanent injunction.  *Ebay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *Id.*

Although the preliminary injunction was not made effective as to Castro and M&M due to lack of actual notice to or service of process on these Defendants at that time, the Court's analysis of the relevant factors justifying a preliminary injunction applied to all Defendants and is incorporated by reference here.  *See ICENY*, 421 F. Supp. 3d at 221-23.  The Court further finds that the analysis remains applicable and warrants a permanent injunction, because Defendants' breach of the Franchise Agreement's bar on post-termination use of ICENY intellectual property, breach of the Non-Competition Clause, and the trademark infringement has caused irreparable harm not fairly redressed by monetary damages, and the balance of hardships and public interest favor an injunction.  Thus, consistent with its prior analysis, the Court will grant ICENY's request to convert the preliminary injunction into a permanent injunction on the same terms, except that

the injunction enforcing the Non-Competition Clause is limited to a period of one year, consistent with the terms of that provision.

### E. Bond

On September 12, 2019, ICENY posted a $2,000.00 bond as security for the TRO issued by the Court. This bond was later accepted as the bond supporting the preliminary injunction. Because the Court will convert the preliminary injunction into a permanent injunction against the Defendants, the Court will grant ICENY's request for the return of the preliminary injunction bond.

### F. Attorney's Fees and Costs

Under the Franchise Agreement, the prevailing party in litigation to enforce it is entitled to "costs and expenses" including reasonable attorney's fees. Franchise Agreement ¶ 26.5. It also requires Defendants to pay "all damages, costs, and expenses (including, but not limited to, reasonable attorneys' fees)" incurred by ICENY in enforcing the post-termination provisions of the Franchise Agreement. *Id.* ¶ 20.4. Moreover, under the Lanham Act, the court may award reasonable attorney's fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). In assessing whether a case is exceptional for purposes of awarding attorney's fees, courts should consider whether, in the totality of the circumstances:

> (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable;
> (2) the non-prevailing party has litigated the case in an unreasonable manner; or
> (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence.

*Georgia-Pacific v. von Drehle*, 781 F.3d 710, 721 (4th Cir. 2015) (citations omitted). Based on the Court's analysis in granting the preliminary injunction, in which the Court found that Defendants willfully breached their contractual obligations, co-opted ICENY's intellectual

property only a few months into operating as an ICENY franchise, and violated ICENY's trademark rights "with impunity," *ICENY*, 421 F. Supp. 3d at 222-23, the Court finds that Defendants' position, which included continuing to violate trademark rights even after the Court issued the TRO, was so objectively unreasonable as to render this case exceptional. Accordingly, the Court finds that ICENY is entitled to attorney's fees under both theories, as sought in Count 12.

In calculating attorney's fees, the Court determines the lodestar amount, consisting of the reasonable hourly rate multiplied by the hours reasonably expended, and applies additional factors consisting of (1) the time and labor expended; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services; (4) the attorney's opportunity costs in advancing the litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the case arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorney's fee awards in similar cases. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008).

Based on its supplemental filing, which adjusted the proposed hourly rate for one attorney, ICENY seeks $52,155.00 in attorney's fees and $2,331.02 in costs and expenses. In support of this claim, ICENY has provided two declarations by attorney James C. Rubinger and billing sheets for the attorneys who participated in this case. Upon review of the billing entries, the Court finds the 147.7 hours of attorney time to be reasonable in light of the justified filing of a Motion for a TRO and a Motion for a Preliminary Injunction, followed by the Motion for Default Judgment.

The hourly rates for each attorney and law clerk identified by ICENY's counsel are consistent with the prevailing rates set forth in the Local Rules of this Court and are therefore found to be reasonable. *See* D. Md. Local R. App. B ¶ 3. The lodestar amount is therefore $52,155.00. In accepting the hourly rates and hours billed, the Court has considered factors 1, 3, 5, 9, and 12 identified in *Grissom*. Upon consideration of factor 8 of *Grissom*, the amount in controversy and the results obtained, the Court finds that the attorneys have achieved favorable results for ICENY such that an award of the full lodestar amount is warranted. There is no identified basis to adjust the attorney's fee award based on factors 2, 4, 6, 7, 10, or 11. Accordingly, the Court will award ICENY $52,155.00 in attorney's fees and $2,331.02 in costs and expenses.

## CONCLUSION

For the foregoing reasons, ICENY's Motion for Default Judgment will be GRANTED. A separate Order shall issue.

Date:  April 16, 2020

 /s/ *Theodore D. Chuang*
THEODORE D. CHUANG
United States District Judge